Thank you, Judge Friedland. May it please the Court. I'm Thijinder Singh for the appellant. I'm going to try to hang on to four minutes for rebuttal if I can. Under this Court's binding precedents, as well as the plain text of the False Claims Act, the public disclosure bar does not compel dismissal of this case. I'll start with this Court's precedents. Most significantly, its very recent decision in Silbersher v. Valiant Pharmaceuticals. That case is indistinguishable from this one. It involved the same plaintiff alleging a similar theory of fraud and the identical theory of public disclosure, that is, that contradictory statements scattered across multiple patent prosecution dockets gave rise to a triggering public disclosure that compelled dismissal. The Court in Valiant held that the answer was no, that actually, when you have facially innocuous statements in different patent prosecution dockets, and a plaintiff supplements those disclosures with his own analysis and knowledge, that the fraud is not disclosed and the public disclosure bar isn't triggered. Well, so if the cases are identical, why didn't you make the substantially similar, not the same argument in this case? Your Honor, we did make the argument in this case. It's true that in 2019, when the first motion to dismiss was being argued, we did not advance this argument. But subsequent to that, both in the appeal from that decision, which we won, then in the subsequent remands, we have advanced this argument. We have advanced it three times, including below in this case and in this appeal. And of course, the Valiant decision was only decided several months ago after the notice of appeal in this case. Yeah, but it didn't change the law. It was just an interpretation of the same statute, right? Your Honor, I think that what's important to recognize about Valiant is, I think it did substantially clarify how the law works in this area. Because there's an ambiguous term in the statute, which is, what is a transaction? What does it mean for a transaction to be publicly disclosed? And courts, including this court in the Metesky case, have kind of wrestled with that a bit. And what we are grappling with is the question of, look, I will admit that the historic facts about what the defendants did were in these materials. That is not something we're denying. However, that information itself is basically raw clay. In the classic formulation, this X plus Y equals Z formulation of when a public disclosure occurs, what we have here is not really Y. What we have is like X plus Q, where Q is stuff that an expert could look at and infer Y, and then from there combine with X to then infer Z. And so when we did this before, it was really unclear how specific the disclosures had to be in order to trigger the public disclosure. So we thought our argument lived better under the original source analysis. But Valiant clarifies that it really works under the substantially the same analysis under this court's precedence. And so we've advanced the argument multiple times. But what really did you add? I mean, your client found, in one case, the patent said no incident. And then in the next case, he found that it said little incident. That didn't take rocket science. So Your Honor, I disagree. I think the way you're describing it requires a lot of hindsight bias, I guess, is the way I would describe it. That is to say, once my client laid it bare, it seems to look more obvious. But until that happens, one word. But Your Honor, it's not even clear that these documents are going to be relevant to each other. When we talk about patent prosecution dockets, there are thousands and thousands of them, each containing thousands and thousands of pages. To know where to look, what to look for is not an easy thing, even to see that the summary results of the ME 110 study and the C106 study over here are actually describing the same study that's over there requires a bit of expertise, because they're not called out quite so specifically. And I would just add that the allegations about the Wendt patents are only one part of this case. Separate from that, there's the allegations about the 009 patent. Separate from that, there are allegations about how all of this is then used downstream to actually cause overcharging to the government. And all of those are additional steps that you don't find in any of the public disclosures in the patent files. And so I think that there is a lot of work being done and a lot of analysis being done. If the question is, what do you add, the principal source of evidence I would point you to is this statement from the state of California in this case. We block quoted it in our opening brief where they say, we are not conducting these investigations. We do not have the resources or expertise to do so. We welcome the efforts of relators like Mr. Silberscher to do exactly this. I think that statement speaks volumes, because you are hearing there from people who are responsible for fraud enforcement that this is not the type of thing they can do on their own. And so when you ask the question that I think is at the heart of the public disclosure bar, is this a parasitic, opportunistic relator who's just trying to get a piece without adding any value to the government's enforcement efforts? The answer has to be an emphatic no in cases like this one. And I would also say, just precedent-wise, it's quite telling that in both the Valiant case, this court found that that was effectively true, and in the only other case my client has brought, which is currently pending in the District of New Jersey, the public disclosure defense was rejected. The case is now deep into discovery. So I'd like to go back to Judge Bumate's, I think, original question. So in this case, you basically waived the sub-substantially similar issue in the first go-around in the District Court, and you waived it again on appeal. Not on appeal, Your Honor. They answered a question on appeal saying, no, that's not at issue, right? Not on appeal, Your Honor, no. So in the appeal, I just want to be clear what happened in the first go-around. In this case? Yes, in this case. So the first time the question was asked, the way Judge Spiro asked the question was, the fraud on the PTO, is that all contained in the patent files? And the concession was, the facts that we're relying on to infer fraud on the PTO are in the patent files. That was the concession. Okay. On appeal, we made the argument as an alternative ground for affirmance, because we won in the District Court the first time. And so when answering the appeal, we made the argument that actually, substantially the same transactions were not disclosed. What's the difference between the way you answered the question before Judge Spiro and the way you're answering it now? So I think two things. The way we answered it before Judge Spiro is, we admitted that the relevant historical facts from which you infer fraud on the PTO are in the files. And I'm not actually saying anything different about that. What I am saying is that Valiant shows that that alone is not sufficient to show that substantially the same transactions... So your argument isn't that there's a waiver that we should overlook. Your argument is that there wasn't any waiver of the point, period. Well, my argument is, I think what I'm saying is that the degree to which we've sort of waived everything is overstated. What we said was the fraud on the PTO is disclosed. We didn't say all the false claims stuff is also publicly disclosed. We never said that. And we emphasized that point. Then on remand, we said, look, substantially the same transactions are not disclosed. And then Valiant makes it quite clear that even our original concession was ill-advised. We should not have done that. Do you have a record site for when, off the remand, where you reasserted, where you retracted essentially the substantial similar? I can find the citation in the briefing. I don't have it. But I do know we have a subject heading in the motion papers that says substantially the same is on our side. And of course, we made the argument on appeal. This court did not reach it because it deemed it waived in the district court. But I think that was an overstatement of the waiver. In other words, it was that what we conceded was fraud on the PTO. Those facts are there. Does it become law of the case if you waived it initially? Perhaps. But even if it does, law of the case is not a limitation on this court's power. We have identified multiple reasons why the court should reach this argument, even if it's law of the case, even if you take our concession to be a broad concession at face value in 2019. The intervening changes in the law are one factor that I think is very important. The fact that this is a pure question of law. The fact that the other side has had multiple chances to brief the argument fully. The fact that this court's precedential decisions, including Patrin and Brown versus Arizona, strongly say that you can reach arguments, even ones that have been affirmatively disavowed. And then perhaps most importantly, it's not only our interests that are at stake here. If we are right, and the district court held that we do state a claim on the merits of the False Claims Act, these folks took billions of dollars from the government and Medicare beneficiaries that they shouldn't have been taking. And if that's true, then the public interest strongly favors reaching this argument and deciding it in our favor. Because I don't think anyone has a good argument that valiant is somehow distinguishable. Really, the only thing holding us back from just ruling in our favor on that ground, I think, is this waiver argument, which I think we should be able to get past in the unusual circumstances of this case. If we were to agree with you and you could get past this bar and get to the merits, we still have to figure out if it states a claim, right? Because it doesn't tell us that it states a claim just to get past this threshold. That's correct, Your Honor. And so, can you tell me what you think your best argument is for Sienter against Allergan on the Wendt patents? Yes, Your Honor. So, the Wendt patents were obtained by Adamus, but then they were licensed to Allergan's predecessor in interest, Forrest, and then Allergan was the one also asserting those patents against generic competitors. And our argument is that the fraudulent scheme encompasses not only the obtaining of the patents, but also their subsequent weaponization against generic competition for the purpose of overcharging the government. Allergan, of course, is one of the entities getting a lot of this money from the government. But Allergan comes into the scene once the patent is granted. Why can't they just assume it was a valid patent? Because that is not how patent law works, Your Honor. So, we cited a case, the In Re Rembrandt Technologies case, which specifically stands, Rembrandt was an IP investor. So, they took patents that were issued, they would invest in them and use them to bring cases, infringement cases. And they were held liable for huge sanctions because their patents that they got were invalid and they should have known it. In the world of patent law, if you were- That wasn't a fraud case, right? That's correct, Your Honor. It's not a fraud case. This is different. It's a little heightened pleading standard and all those- I would actually say- All the differences with fraud. So, I would actually say that it's, if anything, this goes in our favor. Because the CINTRA standard under the False Claims Act encompasses things like recklessness, whereas the standard for the inequitable conduct, which had to be proved in the Rembrandt case, is like specific intent. And so, you know, I think when you can be held vicariously liable for that, it's not far- But your argument is that they had a duty to inspect the prior patents and then by failing to do that, they've recklessly committed a false claim? Well, that could be true, but our actual argument is that they knew. That is to say, our actual argument is that it would have been apparent to a company in Allergan's position that these patents were not valid and that they were asserting them simply to delay generic competition and not to pursue any valid interest under the patent laws. So, there's so much litigation about brands and generics delaying generic entry. How is there no False Claims Act case that's been litigated to the appellate courts about this issue? I mean, is there some problem? They're saying it's too attenuated. What is your response to like why there aren't more of these cases? So, I think the short answer is that because they're not easy to bring. You're right that there's a lot of litigation about brands and generics, but I want to home in on what we think is the key issue here. This is not just a case. It's not like in the bad old days of securities litigation, it used to be any time the stock dropped, there would be a lawsuit, right? Those cases are terrible. The analogy in this case would be any time a patent is deemed invalid, there's a False Claims Act suit. No. We emphatically say no. So, one thing that we haven't talked about that much in this case is that although my client has brought three cases, he's investigated dozens and dozens and dozens and decided most of them are meritless. And that's because in many, many cases, patents will be deemed invalid, but the patent holder was proceeding in good faith. They disclosed the relevant information. They didn't do anything fraudulent. These are the exceptional cases where you have not just invalid patents, but a fraud to get them and then to weaponize them. Actually, I don't know. Are the patents here, were they invalidated? So, the patents were invalidated. That decision was affirmed on appeal in February of 2018. Because of the fraud that you allege here? No, on separate grounds, Your Honor. So, the thing is you don't reach fraud questions often when you're getting to invalidity. There are often grounds short of fraud that will suffice to establish invalidity. And so, if you're like a generic manufacturer trying to invalidate a patent or you're going through the PTAB or whatever, you're generally not going to try to bite off more than you need to chew. So, we don't think it's disparaging of our claims that those weren't the grounds. Okay. What about the other one, the 99? Is that what you call it, the 99 patent? The 009 patent? Yeah. So, that patent has a slightly different history. That's still there, but it doesn't apply to all of the generics. And so, it blocks some of the generics and not others. So, that has a slightly different story. But I guess, how would we presume that this really was a fraud if that patent is still valid? When everything came to light and you accused it of being a fraud? Yeah. We have explained why it's invalid. That is that the 553 patent clearly anticipates the only limitation, the once daily limitation in the 009 patent. And you can just evaluate that allegation on its face. I don't think you need to look to any external source to tell you whether we have a valid argument there or not. I see that I've run quite a bit over the time that I want to use. I do want to answer any questions. I'll give you a couple extra minutes for rebuttal since we took over. Thank you. Thank you. Good morning, your honors, and may it please the court. Erin Murphy on behalf of the Allergan Defendants. This court has long held that a relator who merely uses his or her unique experience or training to conclude that the material elements already in the public domain constitute a false claim does not qualify as an original source. That suffices to resolve this case because there's no dispute here that Mr. Silberscher did not provide any historical facts beyond what was already in the public record. And that's the ground on which the district court ruled below. And by his own telling here, he has simply used the kind of experience that doesn't qualify someone as an original source. Since the most recent amendment to the statute, though, what is your case that says that X expertise is not enough to add? This court has held that in a couple of unpublished opinions, the Hastings and the Roe case that we cite. It's been held by a couple of other circuits. And I think it's correct because there's just not any material change in the statutory language when it comes to this concept. I think if you look at the text of the statute, it's really using knowledge and information interchangeably. And it continues to require that to be knowledge that's independent of and knowledge and information that materially adds to what's in the public record. So what was the purpose for the amendment then? Oh, the amendment changed. It got rid of the requirement that you had to have direct knowledge. So the statute used to say it had to be direct knowledge of the information so somebody who got it second hand couldn't qualify as an original source. And Congress got rid of that. And it added, at the same time, the materially adds to requirement that wasn't in the original source before. So in one respect, they broadened it. And in another respect, they actually narrowed it a little. And I think the materially adds to language is really going to be best understood as reflecting the case law that was out there that says you materially add by having materially different facts, not just by bringing expertise to bear on facts that are already in the public record. So if there is a bridge or a monument that the government is building, so say the federal government wants to build a monument. And they have a request for proposal. They set out how you're supposed to build this monument. It's public, what those requirements are. The monument gets built. It's public. Everyone can see it. But some expert can look at it and say, those are cheaper materials and they didn't build it right. It's all public, but some expert figures out this does not match. You're saying that that expert can't bring the case? Yeah. And that was the very clearly settled law of this circuit before the 2010 amendments. I mean, that is the square holding of A1 ambulance and many cases afterward that if you are not bringing historical facts to bear, but are instead just using your expertise, your background experience, to look at the facts that are already there, you are not an original source. And so what he has to identify is some change in 2010 that abrogated that law that was not just the law of this circuit. That was basically the uniform law of all the circuits that had looked at this question. And I just don't think there's anything that gets you there. The statute continues to use the same words, knowledge and information. And if anything, by adding this requirement that it has to be knowledge that materially adds to what's in the public record seems to be saying, we think the courts were getting it right in saying you have to have something more than just kind of some knowledge or some information. It has to be materially adding to what's already out there. So you only get to original source if the plaintiff can't, or if you get the, if it's the right source. And so I think that's where we have to deal with Mr. Singh's argument about waiver on that point. Sure. First, it is absolutely waived. I would urge the court to look at the full exchange at page 131 of the excerpts of record. It's not just that he responded to the judge back then by saying, when asked point blank, you know, is everything in the patent prosecution files, he said, you know, yes, we agree. But when he was actually asked, is there anything that's not in them, and he said no, and then said we concede that everything's in them. But then the next question from the judge is, so he says, you know, basically, is the only thing I now need to focus on these questions of, at the time it was a debate about what is and is not covered by the public disclosure bar. So the judge didn't just say kind of, I have a question for you about whether the fraud's out there, then said, what's left for me to decide? And he agreed that the questions that were left to decide did not include this question about substantially the same. So there's clearly waiver, and I had read his brief to agree there was a waiver. Do you agree that this is a purely legal question, because that's one of the exceptions to waiver? Or is there facts that need to be developed? I think the way the courts have described this question is its application of law to the factual allegations. So it's kind of a bit of a mixed, you know, obviously we're at the motion to dismiss stage, but it's not like a pure legal question in the sense of what the standard is. It's taking the standard and applying it to the factual allegations in this complaint. And I would say to the extent there's discretion to overlook a waiver, this just is the very last case, I think, in which a court should do it. He cannot claim to not have anticipated the valiant decision, because he's the relator in valiant. He's the party who procured the decision. The two cases were brought the same time, at the same year. He made an argument there that he chose to affirmatively concede in this case. And then, just to kind of make matters worse for him, when valiant sought rehearing before this court, he defended against rehearing by saying this decision didn't affect any change in the law. This decision just took the law and applied it to the complex factual allegations in the valiant case. And then, for good measure, when there was a cert petition in valiant, he told the Supreme Court, it's not just that I brought specialized expertise. The court concluded that I had facts to bear that were not in the public record. So he took a bunch of positions in valiant that this was not some intervening change in the law. And so I don't think he gets a second bite at the apple here, just because he won on an argument there that he chose not to press originally in this case. And it is an independent problem for him. This court did conclude in the last appeal that he waived this argument. So he's got a waiver, and we do have a law of the case, and all of these things to overcome here. And I just don't think you get there. It just seems that valiant, even if it is application of law to fact, it tells us how to apply the law to the facts in this type of case. And so it's hard to see how it didn't add something. Like, why did they publish if it's not adding something? I don't. I mean, I think at most, it's just kind of how you apply it in the particular context. But the facts here and the facts there are not the same. Yes, he has the same ultimate theory that somebody committed fraud on the PTO, and by virtue of that, ended up submitting a false claim. But the theory of fraud on the PTO is not the same. I mean, there you had different parties who had submitted the patent applications. You had to kind of tie all of that together through some studies that showed that these two seemingly different parties were related to each other. And if you look at the district court opinion in valiant, the principal source that had tied all of that together was an IPR proceeding. And this court on the appeal reversed the district court on the conclusion that an IPR proceeding is covered by the public disclosure bar. So the documents that had really tied all of this together and laid out exactly the same theory were the one thing that this court held was not covered by the public disclosure bar. And so I think the best understanding, if you take the panel at face value in what it said, which is it found that he had facts to bring to bear on the case that were not part of the public record, that's my best explanation for what the court was thinking there. Because otherwise, I mean, if you look at what he's saying in his brief, he basically admits his argument on substantially the same, is the same argument that he's making on original source, that any time you bring your expertise to bear, you get out of the public disclosure bar. And again, that would be at odds with a decade or two of this court's case law as well as the case law of many other circuits that had addressed these issues. Unless you have anything else. Thank you very much. Good morning, Your Honors. Andrew Hoffman on behalf of Defendant Apoe's Adamus Pharma LLC and Adamus Pharmaceuticals Inc. May it please the court. I would like to pick up right where you just left off, Judge Friedland, and it really seems like we need to talk about the Valiant case. And Mr. Singh said that, you know, the cases are indistinguishable, they're identical, they're exactly the same, and that Valiant necessarily dictates the result here, that's an intervening controlling authority. That's actually not true. Our brief actually goes into great detail about why the two cases are not exactly the same on the facts, and I'd like to address that. Mr. Silberscher's position is that Valiant stands for the idea that a QTAM complaint can survive the public disclosure bar even though it relies entirely on public facts because the whistleblower, the QTAM relator, brought his expertise to bear and just pieced together the otherwise public information. That is not what Valiant says at all. What Valiant does is it applies to those complicated facts the established Matesky framework, X plus Y equals Z, to an unusually complex set of facts that are meaningfully different from the ones here, and Ms. Murphy got to this, and while I agree with everything she said about waiver, this issue's waived. But if you're going to talk about the facts, what's critically important in Valiant is that there were, it's a multi-party scheme to defraud the PTO. There are two different companies, one who made a false statement to the PTO, allegedly, that's Dr. Falk Pharma. It's still to this day not a part of Valiant. There's a second company in a separate patent application called Salix that allegedly presents the true facts. That's now part of Valiant. And what the Valiant opinion says, it never uses the word expertise once. It never says talent. It never says insights. It says facts seven times. It says Mr. Silberscher provided missing critical facts. I'd really encourage the court to go read pages 1167 and 1168 of the revised Valiant opinion, the operative Valiant opinion, because it talks about facts seven different times. And the facts that he provided went to Sienter. And those facts are, yeah, you have these seemingly two independent companies that made inconsistent statements to the PTO. Well, we know that Dr. Falk was speaking falsely, was giving knowingly false information, because Dr. Falk was working with Salix. They had the same personnel, the same outside counsel who were working on the patent applications, prosecuting the patents. They were both financially interested in building up this Otterbeck patent. Sorry, if I can move. Can I talk about the text of the public disclosure bar? You know, I think it is somewhat difficult to read. I mean, it seems like, is your argument that in B2, that knowledge is the same as the information to the government at the end of the sentence? Judge Bumate, yes. That is our position, that when the statute says that the original source must provide the information to the government, that use of the definite article is important. Yes. And it's referring back to the knowledge. Because, you know, if it didn't have that last clause about, you know, providing the information to the government, I think it's quite ambiguous what knowledge can mean. Would you agree with that? I agree that knowledge plucked out of its context in the original source rule is perhaps a word that could encompass something like expertise. Right. That's their theory. Is there anything else besides the information to the government that really cabins what the word knowledge means in the first phrase? I think a few things. One is also that it doesn't just say the knowledge. Right. It says provide the knowledge. When I think of Provide the information. Pardon me. Provide the information. Why don't we just apply the simple, like, canon that if Congress uses different words in the same statute, they mean something different? The reason is the statute that was inherited here, the 2010 amendments, was, you know, a modest adjustment to a statute that existed, you know, since 1986. And every single court to reach this question in every circuit, including this one, looked at the use of the words knowledge and information in this statute and held that it referred to historical factual knowledge, historical factual information. You're using the soil, the statute brings the soil with it, the fact that Congress legislated that background. I think Congress legislates knowing how these words have been interpreted by the courts. And this wasn't like one or two cases. We're talking about decades of precedents that talked about this exact question. And I would also say that every circuit to reach the question in the intervening years since 2010 has also landed on exactly this interpretation and rejected the idea that your subject matter expertise can make you an original source. We submitted a Rule 28J letter about a recent circuit decision from the 10th Circuit rejecting Mr. Silberscher's argument. Different case. He's not the plaintiff there, but, you know, rejecting the expertise argument. And even since that opinion came out in August of 2024, the 11th Circuit has joined the chorus. And we can submit another 28J letter if it would be helpful. But it's the Jacobs v. J.P. Morgan case at 113 F. 4th, 1294, where they reject the notion that there, a key tamer later who is an expert in foreclosure law, it's another lawyer who reviewed some court documents, they rejected the idea that his legal expertise was enough to make him an original source. And, you know... So, you're saying we would be an outlier if we were to hold that some sort of specialized expertise is knowledge or the information? You would not just be an outlier. You would be the only court to ever hold them. If you look at Mr. Silberscher's brief, there is, I think their leading case in the opposite direction is an unpublished trial court decision from Illinois State Court on wildly different facts and it's a different statute, you know, it's Illinois state law. That's their leading case. We've got a mountain of precedent on our sides before and after 2010. I think when we went this way, you were talking about Valiant and I am, I think you were about to say what the facts were rather than the expertise in Valiant because I'm not sure I see it. I mean, looking at, I'm on 1168 and it seems like the court says the critical fact necessary for Sienta is that Falk and Valiant took conflicting positions in their patent prosecutions. But why isn't that just evident? So it's not, so I think what's going on with the Valiant case, you'll notice in that sentence you just read, they refer to Falk and Valiant. That's actually the only place in that opinion where they separately identify two different companies and talk about Sienta. Every other place in that opinion refers to the companies collectively as Valiant. I think that was an unfortunate choice by the Valiant panel because it obscures more than it illuminates. I think they were doing that for the sake of simplicity. You can look at footnote one in the Valiant opinion. The reality is you have two different companies and the facts that he brought to bear. The fact that two different companies brought two mutually inconsistent patent applications doesn't tell you anything about Sienta. In context, if you look at the Valiant decision, if you look at the record, we describe it in detail in our brief at pages 16 and 17, and if you read the Valiant opinion with the previously redacted or rescinded opinion. You're saying we can't just look at the face of the Valiant opinion, it seems like. Because the face of the Valiant opinion seems to me to say expertise is enough. Because I don't know how else to read that sentence. It doesn't use the word expertise anywhere. Well, it doesn't say. But I mean, what is the fact that's added other than understanding what these public documents mean? The fact that's added is that it's not spelled out as clearly as it could be because the Valiant panel refers to these different companies all under the word Valiant. But if you look at the, you have to put the two opinions side by side, they take out the language that Mr. Silversher relies on in his principle brief. The facts are the facts of the show, and you have to go into the record, and we cite to the record, Mr. Silversher explained the reason that Dr. Falk's statement was not just false but knowingly false is because the same people, the same patent lawyers, the same outside counsel were also working on the Salix unrelated patent application, this other company's patent application. You're basically saying we can't take Valiant at face value. I'm saying you can take. The quote, the full quote that Judge Friedland read was, Silversher's allegations provide a critical fact necessary for Sienter, Falk and Valiant took conflicting positions in their patent prosecutions of the two patents, neither of these patent prosecutions or any other disclosure reveals that fact full stop. Just comparing two public disclosures. How is that relevant? How does that reveal Sienter? Publish opinion. Judge, how does that, respectfully, how does that show anything about Sienter that they took conflicting positions? What you have to show is that the party that made the false statement knew it was false and that's what Silversher adds. He explains, if you look at his complaint, he explains how we know Dr. Falk, which is to this day not part of Valiant, knew the false statements. They knew their statements were false because they knew the truth because they and their patent lawyers, their outside counsel worked on the Salix patent application. And that information was also public. That is not one of the public, those are not public facts identified by the Valiant court as public facts. It would be in the prosecution history, wouldn't it, who worked on it? The facts that are, the Valiant. The prosecution history is going to identify the lawyers, it's going to do all that. I'm not perfectly familiar with that. It may. No, because I try patent cases. So then, of course, Your Honor, but the facts that are identified as publicly disclosed, the ones that were litigated as the public facts in Valiant doesn't say anything about those facts that were connecting Salix and Falk because they gloss over it by just labeling all of the companies Valiant. Do you have any case that tells us that the way we should interpret our opinions is to read a whole bunch of other things? I don't, Your Honor. Okay, I think we've taken you over your time. Thank you, counsel. Let's put three minutes on the clock for rebuttal, please. Thank you. I'd like to start where you just left off. I think page 1168 of the Valiant opinion is very, very good for us. There, what the court says is that the essential fact is a factual allegation based on analysis of publicly disclosed other facts. And that's really what you have here. In that case, there was a declaration that said, wow, you cannot take this without food. And another one said, oh, you can't take it with food. And it was the analysis of those two publicly disclosed pieces of information that allowed my client to say, aha, false statements are being made here in the prosecution of these patents, and then to go from there down to further analysis, getting you to how generics are excluded, how the government is overcharged. The same is happening here. Dr. Wendt's first declaration makes representations in summary form about these studies. A later declaration, years later, in a totally different patent prosecution, says the actual results of the study, my client is the one who is able to consider these sources, recognize what they mean, perform the analysis, allege the same fact necessary for Sienter that Dr. Wendt made knowingly false statements the first time around, and explain why that's true, and so on. And so if Valiant is wrong- Speak to the language of the statute. What is your response to the questions about what the language of the statute means? Yeah. So I think it is quite clear that when Congress amended the statute, it was trying to bring in cases like this one. We have cited multiple sources from Senator Grassley kind of explaining this. He is the person who wrote the text that is in the statute, and it has been his position since essentially 1986 that people who are using their expertise to help the government are not parasites and opportunists. They are exactly who we want to recruit into the fight against fraud. They are honest citizens who are trying to make our country better, and we should not stop them from helping the government when they have valuable expertise to share. But what about the text? Yeah. That's just one senator. Yeah. So- I know an important senator who- To be sure. In this field, but that's not what the text says. Oh. But I think the text is pellucid. So the knowledge that is independent of and materially adds. The word knowledge is not qualified in any way. I agree. It's not factual knowledge. I think, Judge Bumate, if they wanted the information provided to the government to be the same as the knowledge, they wouldn't have used knowledge. They would have used information. They would have said the original source has to have information that is independent of and materially- That's a very strong argument. And must provide the information. They've used different- But what about the response that, well, Congress legislated and amended the statute in light of the judicial interpretations that all required some historical fact? Yeah. It's the opposite. I mean, so Congress was trying to change the rule of those decisions, is our argument. When the Supreme Court has routinely interpreted a statute language one way, and Congress uses the same language, or consensus of circuit courts, then the strong inference is they wanted to keep it the same. Correct. But they didn't keep it the same. They changed the language. And we know from Senator Grassley's comments repeatedly that the target of the changes was those decisions. I thought it was about indirect versus direct knowledge. So that is one of the changes they made, because that, of course, would have excluded these relators as well. Right. But it is not the only change they made. The other change was it used to say direct and independent knowledge of the information on which the allegations are based. That qualification of the information on which the allegations were based is also removed. That is a subject matter limitation of the relevant knowledge. The subject matter limitation is gone, which broadens the scope of qualifying knowledge. It broadens it to things like patent law, science, materials used in monuments. There are any number of things that could be knowledge. Now, we are not, I want to be super clear about this, we are not saying kick open the door to any self-professed expert. There is an important requirement. The knowledge must materially add to the publicly disclosed transactions. And so, this has to be. How is that a limitation in any way? So, you know, a lawyer adds knowledge whenever, you know, isn't that, aren't they using some knowledge there when they, if any lawyer tries to bring a claim, they're saying, well, I just used my legal skills. Yeah. But the question is, is that a material addition? Yeah. That, I think, is an inquiry that you would make in context of the False Claims Act. So, for example, if what you have, I'll just give you a really easy example. Let's say there was, in Judge Friedland's example, let's say there's a New York Times article that says, new government monument uses cheap degrading materials. And then what you have is a lawyer who says, aha, False Claims Act, and just brings a False Claims Act case based on that. Well, he will say, well, using my knowledge of what False Claims Act are, you know, that this seems like a fraud, and so, therefore, I use added knowledge there. Yes. And you should hold in that case that they did not materially add. Why not? Because there is nothing in the lawyer's knowledge that is not the knowledge that most members of the public, and it's certainly everybody doing fraud and enforcement. Not everyone knows what, like, the scienter is and, like, how to establish scienter. I mean, why is that not legal? Why doesn't that materially add? Certainly everybody enforcing the False Claims Act inside the government does know. And that's the standard what government lawyers would know? Oh, absolutely. So, Your Honor, if you look at the cases that they want to point you to, look at cases from the Tenth Circuit, like Reed, for example, Rahimi from the Sixth Circuit, what they all say is, are you materially adding something to the person, the audience? And in this case, the audience is the government's fraud enforcement apparatus. And our statement from the state of California shows why we are materially adding in this case, because the government is not undertaking these sorts of reviews of patent prosecution dockets. It doesn't have the expertise. It doesn't have the resources to do that in its fraud enforcement apparatus. Quite the other story in the hypothetical about the monument or any of the other scary examples the other side wants to steer you toward. I would also say that even if I'm wrong about this, I think if you're – so you can avoid all of it by just ruling in our favor on the valiant point. You do not have to decide any original source questions to the extent you find that inquiry thorny or ambiguous after the amendments. You can avoid all of it by simply applying binding precedent from this court on indistinguishable facts that came out this year. Thank you. We're taking you over your time. Thank you, both sides, for the very helpful arguments this case has submitted.
judges: FRIEDLAND, BUMATAY, Kennelly